IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAHLON BALWINDER, | No. 2:22-CV-2019-DMC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

   Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 7 and 9, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c); see also ECF No. 10 (minute order reassigning case to Magistrate Judge). Pending before the Court are the parties' briefs on the merits, ECF Nos. 12, 14, and 15.

   The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

Step 1   Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2   If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3   If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

///

|   |   |   |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on March 23, 2020. See CAR 17.[1] Plaintiff claims disability began on March 12, 2020. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on August 13, 2021, before Administrative Law Judge (ALJ) Vincent A. Misenti. In a September 1, 2021, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): myofascial pain syndrome;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the claimant can perform light work; the claimant can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds; the claimant can frequently balance, stoop, kneel, crouch, and crawl; the claimant should avoid concentrated exposure to moving mechanical parts, unprotected heights, extreme cold, and extreme heat;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant can perform past relevant work as a semi-conductor assembler.

See id. at 17-24.

After the Appeals Council declined review on September 15, 2022, this appeal followed.

///
///
///
///
///
///
///

---

[1] Citations are to the Certified Administrative Record (CAR) lodged on February 21, 2023, ECF No. 11.

## III. DISCUSSION

In her opening brief, Plaintiff argues: (1) the ALJ erred at Step 2 in determining Plaintiff's severe impairments by finding that impairments related to use of her hands and arms are not severe; (2) the ALJ erred at Step 4 by failing to discuss opinions provided by examining physician Dr. Schwartz; (3) the ALJ erred at Step 4 in evaluating Plaintiff's subjective statements and testimony; and (4) the ALJ's vocational findings at Step 5 are flawed due to the ALJ's errors at Step 2 and Step 4.[2]

### A.   Evaluation of Opinions Offered by Dr. Schwartz

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social

---

[2] Plaintiff's arguments concerning the severity of her impairments and opinions offered by Dr. Schwartz are presented under the same heading in Plaintiff's brief. Because Plaintiff's severity argument is based on her contention that the ALJ erred with respect to Dr. Schwartz, the Court will discuss the ALJ's evaluation of medical opinions at Step 4 first, then turn to Plaintiff's severity argument.

workers may be discounted provided the ALJ provides reasons germane to each source for doing so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The Commissioner has promulgated revised regulations concerning how ALJs must evaluate medical opinions for claims filed, as here, on or after March 27, 2017.  See 20 C.F.R. §§ 404.1520c, 416.920c.  These regulations supersede prior caselaw establishing the treating physician rule which established a hierarchy of weight to be given medical opinions depending on their source.  See id.; see also Jones v. Saul, 2021 WL 620475, at *9 (E.D. Cal. Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or manifestly contrary to statute, (2) the prior judicial construction was not mandated by the governing statutory language to the exclusion of a differing agency interpretation, and (3) the [treating-physician rule] is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override [prior caselaw.]").  Thus, ALJs are no longer required to "defer to or give any specific evidentiary weight to" treating physicians over medical opinions from other sources.  See Carr v. Comm'r of Soc. Sec., 2021 WL 1721692, at *7 (E.D. Cal. Apr. 30, 2021).

Under the revised regulations, the ALJ must evaluate opinions and prior administrative medical findings by considering their "persuasiveness."  See Buethe v. Comm'r of Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal, May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)). In determining how persuasive the opinion of a medical source is, an ALJ must consider the following factors:  supportability, consistency, treatment relationship, specialization, and "other factors."  See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)).  Despite a requirement to consider all factors, the ALJ's duty to articulate a rationale for each factor varies. See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

/ / /

/ / /

/ / /

Specifically, in all cases the ALJ must at least "explain how [she] considered the supportability and consistency factors," as they are "the most important factors." See Buethe, 2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)).  For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion] will be." See Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(1)).  "For consistency, the regulations state: '[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)).  "The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and 'other') only when 'two or more medical opinions or prior administrative medical findings about the same issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent with the record.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

At Step 4, the ALJ evaluated medical opinions offered by various sources. See CAR21-23.  The ALJ did not discuss Dr. Schwartz in the hearing decision.  See id.  Plaintiff argues:

> Dr. Schwartz opined Plaintiff should not engage in strenuous repetitive pinching, pulling, gripping, or grasping with either hand, no climbing, and would be limited to occasional reaching, handling, and fingering activity and should not return to her previous job which required these activities. (Tr. 604.). . . .
> . . .Dr. Schwartz, as noted above, opined that Plaintiff would be limited to occasional reaching, handling, and fingering activity. (Tr. 604.) The VE's testimony established that this limitation would preclude the performance of Plaintiff's past relevant work. (Tr. 46.) Given Plaintiff's age (55 at the time of the hearing) and the ALJ's own RFC allowing for a reduced range of light exertional level work, if Plaintiff cannot perform her past relevant work and has no transferable skills then she would be deemed disabled based on 20 C.F.R. § 404, Subpart P, Appendix 2, Rule 202.06.
> The ALJ did not mention Dr. Schwartz's opinion in the decision, did not analyze its persuasiveness based on supportability and consistency with the evidence, and did not provide any rationale for failing to include the limitations Dr. Schwartz assessed in the RFC finding. The ALJ did ask the vocational expert to consider a limitation to occasional handling and fingering activity (Tr. 46), suggesting that the ALJ was aware of this opinion's existence in the record.

>Because the ALJ improperly rejected critical aspects of the opinion of Plaintiff's examining doctor in the absence of legally adequate reasons for doing so, and because this opinion establishes that Plaintiff is disabled when properly considered, this Court should reverse the ALJ's decision.

ECF No. 12, pgs. 7-8.

Medical records from Dr. Schwartz are contained in the record at Exhibit 6F. See CAR 597-607. These records include periodic progress reports dated June 28, 2013, September 27, 2013, and January 13, 2014, apparently related to a worker's compensation claim. See id. These reports are summarized below.

>June 28, 2013 – Plaintiff was evaluated by Dr. Schwartz for recurrent pain in both upper extremities following a recent return to work. The doctor performed a comprehensive physical examination. Tinel's and Phalen's signs were positive in both wrists, though sensation was otherwise intact in the digits with light touch bilaterally. Examination of the right upper extremity demonstrated tenderness to palpation. There was minimal pain with increased wrist dorsiflexion of the right elbow. There was diffusion tenderness to palpation of the right wrist. Dr. Schwartz opined that Plaintiff should not return to her previous position, which required repetitive strenuous use of both hands. See CAR 603-04.
>
>September 27, 2013 – Plaintiff presented with complaints of increasing pain in her right forearm and wrist, which Plaintiff was treating with prescription Voltaren gel. On physical examination, Plaintiff had normal range of motion in her right elbow. Tinel's sign was negative. Tenderness to palpation over the right medial and lateral epicondyles was noted. Tinel's and Phalen's signs were negative at the right wrist. Compression sign was negative at the right wrist. Sensation was intact to light touch. Dr. Schwartz concluded that Plaintiff was experiencing a flare-up on pain in both hands. The doctor refilled Plaintiff's prescription for Voltaren gel and referred Plaintiff for physical therapy of the hand once a week. Dr. Schwartz offered no opinions regarding Plaintiff's ability to work. CAR 601-02.
>
>January 13, 2014 – Dr. Schwartz noted Plaintiff's complaints of severe pain on the right radial aspect of her right wrist and the medial aspect of the right elbow. On physical examination, Plaintiff's range of motion in her right elbow was normal. Tinel's sign was negative at the medial aspect of the right elbow. No tenderness was noted over the right forearm. Tinel's sign was positive for the right wrist. Phalen's sign was also positive for the right wrist. Dr. Schwartz concluded that Plaintiff was suffering a severe flare-up of pain in her right wrist and elbow. The doctor recommended continuation of prescribed pain medication gel. Dr. Schwartz stated that Plaintiff may continue working at full-duty capacity. See CAR 598-99.

/ / /

/ / /

The Court finds no error with respect to Dr. Schwartz for the simple reason that Dr. Schwartz has not offered any opinions regarding Plaintiff's functional capacity other than to say, most recently on January 13, 2014, that Plaintiff can return to full-duty work. Notably, these records pre-date the alleged onset date of March 12, 2020.

### B. Severity Determination

To qualify for benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).[3] In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923. An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. See Social Security Ruling (SSR) 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. See id.

At Step 2, the ALJ determined that Plaintiff sole severe impairment is myofascial pain syndrome. See CAR 20. In doing so, the ALJ considered other claimed impairments and determined they are non-severe. See id. The ALJ stated:

> The claimant further has the following impairments: asymptomatic HIV positive disease and carpal tunnel syndrome. Regarding asymptomatic HIV positive disease, the claimant testified that she had feelings of muscle weakness, dizziness, drowsiness, and pain in her legs. She testified that she did not have such symptoms due to HIV, but its medication side

---

[3] Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

9

effects. Despite the claimant's allegations, on July 8, 2020, the claimant requested a refill of prescription Triumeq, without reporting associated side effects or limited efficacy (Ex. 2F/104). Testing on July 9, 2020, indicated that the claimant's CD4 count was within the normal range, measuring 1,276 (Ex. 2F/146). Treatment notes from July 17, 2020, detailed that HIV was controlled and the claimant was to continue current medications (Ex. 2F/147). Records from May 19, 2021, noted an assessment of HIV, but no associated limitations or treatment (Ex. 5F/54). Considering carpal tunnel syndrome, an X-ray of the claimant's right hand on September 22, 2020 showed minimal distal interphalangeal ("DIP") joint degenerative changes (Ex. 4F/35). Farah M. Rana, M.D., internal medicine consultative examiner, evaluated the claimant on October 21, 2020, and observed that the claimant had tenderness in the wrists, but that her range of motion was within normal limits (Ex. 3F/3). Based upon the examination, Dr. Rana noted an impression of, in part, history of carpal tunnel syndrome (Ex. 3F/4). As the evidence does not show that such impairments significantly limit the claimant's ability to perform basic work activities, they are nonsevere.

The undersigned has considered the claimant's alleged symptoms of migraine headaches. There is no objective medical evidence that documents this diagnosis resulted from abnormalities that are demonstrable by medically acceptable clinical or laboratory diagnostic techniques. A medically determinable impairment may not be established solely based on symptoms alone, or on the claimant's allegations regarding symptomatology (20 CFR 404.1508). There were no medical signs or laboratory findings in line with the guidance contained in SSR 19-4p to substantiate the existence of a medically determinable impairment. Accordingly, the undersigned finds there was a lack of objective evidence to substantiate the existence of a medically determinable impairment.

CAR 20.

Plaintiff argues that the ALJ erred at Step 2 in concluding that Plaintiff's impairments related to use of her hands and arms are not severe because the ALJ failed to consider opinions offered by Dr. Schwartz. See ECF No. 12, pgs. 7-9. Citing CAR 604 (the June 28, 2013, report from Dr. Schwartz), Plaintiff contends that Dr. Schwartz opined that Plaintiff is unable to engage in strenuous repetitive pinching, pulling, gripping, or grasping with either hand. See id. at 7.

The Court does not agree with this characterization of the record. Specifically, in the June 28, 2013, report, Dr. Schwartz notes a prior worker's compensation determination, not a current opinion. Instead, Dr. Schwartz opined that Plaintiff cannot return to her previous work requiring repetitive strenuous use of both hands. Thus, Plaintiff could engage inwork-related activities that did not involve repetitive strenuous use of both hands. In any event, these

10

limitations pre-date the alleged onset date of March 12, 2020, by several years and are not indicative of Plaintiff's condition after that date.

Plaintiff has not pointed to any objective evidence showing more than minimal limitations with respect to her hands or wrists which existed on or after the alleged onset date. The Court, therefore, finds no error with the ALJ's analysis at Step 2.

### C. Evaluation of Plaintiff's Subjective Statements and Testimony

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

///

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to discount testimony of disabling pain, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable

to a work setting." <u>Fair</u>, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to discount a claimant's pain testimony. See <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005).

At Step 4, the ALJ evaluated Plaintiff's subjective statements and testimony. <u>See</u> CAR 21-23. The ALJ summarized Plaintiff's statements and testimony as follows:

> The claimant reported that she was limited in her ability to work because of a wrist injury, an arms-elbow head injury, a shoulder injury, and a nervous system injury (Ex. 1E/2). In a later submitted document, the claimant alleged worsening joint pain, decline in motor function and handgrip, and increase in muscle weakness, as well as new onset of short-term memory loss and decreased vision (Ex. 8E/2). The claimant testified that she was limited in the amount of weight that she could lift and for a period was restricted to lifting no more than seven pounds. She testified that she was unable to sit for extended periods. She testified that she occasionally had difficulties lifting her arms high enough to change her clothes. She testified that she does not perform more than minimal household chores because of her impairments. She testified that she was unable to maintain her grip to perform household chores.

CAR 21.

In determining that Plaintiff's statements and testimony are "inconsistent with the overall evidence of record," the ALJ stated:

> Although the claimant sought treatment on March 6, 2020, reporting, in part, fatigue and body ache, a physical examination was generally normal, while the claimant presented in no distress and was not observed as fatigued (Ex. 2F/59-61). While the claimant reported muscle weakness and fatigue on September 21, 2020, she presented as well appearing in no distress without notations of observable fatigue (Ex. 4F/9-10). A physical examination detailed decreased range of motion and mild joint line tenderness of the left knee, without notations of reduced strength or muscle atrophy (Ex. 4F/10-11). At that time, only conservative treatment was recommended for the claimant's joint pain (Ex. 4F/11). An X-ray of the claimant's left knee on September 22, 2020, showed no significant degenerative changes (Ex. 4F/33).
>
> Dr. Rana conducted an internal medicine consultative examination of the claimant on October 21, 2020, and observed tenderness in the shoulder, elbow, wrist, knee, and ankle joints, while the claimant retained a normal range of motion (Ex. 3F/3). Dr. Rana noted at least ten tender points in the examination of the claimant (Ex. 3F/3). Dr. Rana indicated that the claimant retained five out of five motor strength throughout (Ex. 3F/4). Dr. Rana reported an impression of, in part, myofascial pain syndrome in consideration of tender points observed upon examination (Ex. 3F/4).

/ / /

/ / /

On December 24, 2020, the claimant sought treatment reporting pain in her hands, as well as occasional foot and knee pain, which she was concerned was a side effect of Triumeq (Ex. 4F/7). At that time, her treatment provider indicated that such pain was likely associated with osteoarthritis changes and provided conservative treatment of counseling to exercise regularly and increase her activity level (Ex. 4F/7).

In summary, the claimant is an individual of advanced age who alleges an inability to work due to disabling HIV positive disease symptoms including muscle weakness, dizziness, multiple joint pain and tenderness, and headaches. However, the undersigned notes initially that the claimant testified that she was released from her job for being rude to coworkers rather than because of an alleged physical impairment. Further, at the hearing, the claimant admitted that HIV positive disease is very well controlled by medications, while her testing levels, including CD4 are consistent with HIV positive disease being asymptomatic (Ex. 2F/146; Hearing Test.). Instead, as discussed above, the claimant's multiple tender points are more consistent with myofascial pain syndrome while examinations showed a normal gait and negative neurological testing as well as imaging studies that did not show significant abnormalities (Exs. 2F/59-61; 4F/7, 10-11, 33, 35; 5F). Indeed, the claimant has not required hospitalization and the applicable treatment records show that all body systems are normal with no HIV related symptoms or infections (Exs. 2F; 4F; 5F). Further, the claimant's alleged carpal tunnel syndrome is not supported by any objective medical findings. Additionally, the claimant's carpal tunnel syndrome is not consistent with her reported functional abilities that include using a cellular telephone, conducting daily internet searches, and applying for jobs, which suggests that the claimant is not as limited in her functional abilities and is able to work. Beyond applying for jobs, the undersigned notes that although the claimant testified that she is severely limited in her functional abilities and requires assistance from family members, on March 13, 2021, the claimant reported to her treatment provider that she was the caretaker for her elderly parents, which suggests that the claimant is more functional than alleged (Ex. 5F/24).

CAR 22-23.

Plaintiff argues:

> The ALJ cites the objective medical evidence generally as being inconsistent with the degree of impairment Plaintiff alleged but does not identify specific aspects of Plaintiff's testimony which are actually inconsistent with any specific portion of the medical record. . . . Here, the ALJ has not specified which testimony he found not credible and has not provided clear and convincing reasons supported by evidence in the record to support the determination regarding the consistency of Plaintiff's testimony with the medical evidence.

ECF No. 12, pg. 10.

///

///

Plaintiff's argument is unpersuasive. The Court finds that the ALJ properly evaluated Plaintiff's statements and testimony on an issue-by-issue basis. For example, the ALJ noted that Plaintiff complained of fatigue and body aches in 2020, yet physical examinations were normal. As to Plaintiff's complaints regarding her shoulders, wrists, elbows, and ankles, the ALJ observed that Dr. Rana reported normal objective findings on examination. As to hand, knee, and foot pain for which Plaintiff sought treatment in 2020, the ALJ noted that the physician who examined Plaintiff at that time recommended a conservative course of treatment consisting of counseling to exercise regularly and maintain her level of activity. Similarly, as to Plaintiff's alleged carpal tunnel syndrome, the ALJ noted the lack of any objective evidence of limitations associated with this impairment.

The Court finds that the ALJ's analysis of Plaintiff's subjective statements and testimony is consistent with the regulations and objective evidence as a whole.

### D.     **Vocational Findings**

The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sulliacvan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart

P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities.  See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole.  See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

At Step 5, the ALJ obtained vocational expert testimony and determined that Plaintiff can perform her past relevant work as a semi-conductor assembler.  See CAR 23-24.  In doing so, the ALJ stated as follows:

> The vocational expert testified that the claimant has past work as a semi-conductor assembler (Dictionary of Occupational Titles (DOT) #726.684-034, sedentary as generally performed, light as actually performed$_2$, semi-skilled at Specific Vocational Preparation (SVP) level 3). In order to be considered past relevant work, a job must have been performed within the past fifteen years, lasted long enough for the individual to learn how to do the job, and been substantial gainful activity (20 CFR 404.1560(a)(1)).

> The claimant completed a Work History Report asserting that she worked as a semi-conductor assembler from March 2006 through March 2020, almost all of which occurred during the last fifteen years (Ex. 5E). Based on the vocational expert's testimony and the claimant's Work History Report, as referenced above, the time the claimant spent working as a semi-conductor assembler meets the duration requirement for work at SVP level 3 (Dictionary of Occupational Titles Fourth Ed., Appendix C). Finally, the claimant's earnings record shows that the claimant worked as a semi-conductor assembler at the level of presumptive substantial gainful activity as defined by our Regulations for the required duration (Ex. 8D). Because all three requirements have been satisfied, the undersigned therefore considers the claimant's past work as a semi-conductor assembler to be past relevant work.
>
> Upon questioning by the undersigned, the vocational expert testified that if an individual had the claimant's residual functional capacity, such an individual could perform the claimant's past relevant work as a semi-conductor assembler. Therefore, the undersigned finds that the claimant could perform her past relevant work as a semi-conductor assembler, as generally and actually performed.
>
> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT).

CAR 23-24.

Plaintiff argues that, because the ALJ erred at Step 2 regarding severity and at Step 4 regarding evaluation of her subjective statements and testimony, the ALJ also erred at Step 5 in concluding that she can perform her past relevant work. See ECF No. 12, pg. 11. According to Plaintiff:

> . . . Here, the ALJ omitted the limitations assessed by Plaintiff's treating doctor, Dr. Schwartz and Plaintiff's credible allegations. Because the VE's testimony that Plaintiff could perform the occupation identified by the ALJ was based on the ALJ's failure accurately to pose all of Plaintiff's limitations, the VE's testimony that Plaintiff can perform that occupation has no evidentiary value. The ALJ's decision is based on evidence which has no evidentiary value, and so that decision is not based on substantial evidence.

Id.

The Court does not agree. As discussed above, the ALJ did not err with respect to severity, Dr. Schwartz, or Plaintiff's subjective statements and testimony. Thus, the ALJ's reliance on the vocational expert's answers to hypothetical questions consistent with the residual functional capacity determination was appropriate.

17

### IV.  CONCLUSION

Based on the foregoing, the Court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment, ECF Nos. 12 and 15, is denied;
2. Defendant's motion for summary judgment, ECF No. 14, is granted;
3. The Commissioner's final decision is affirmed; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  December 7, 2023



DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE